IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA

**JACK MICHAEL LAWHUN and
HEATHER LAWHUN,**

      Plaintiffs,

  v.                                        Civil No. 1:22-CV-112
                                                  (Chief Judge Kleeh)

**CMH HOMES, INC. d/b/a
CLAYTON HOMES MORGANTOWN, WV;
CMH OF KY, INC.;
CMH MANUFACTURING, INC.; and
JOHN DOE PERSONS AND/OR ENTITIES;**

      Defendants.

**MEMORANDUM OPINION AND ORDER DENYING REMAND,
COMPELLING ARBITRATION, AND STAYING PROCEEDINGS**

Pending before the Court are *Motion to Compel Arbitration and Stay Proceedings* filed by Defendants CMH Homes, Inc. ("CMH Homes") and CMH Manufacturing, Inc. ("CMH Manufacturing") (collectively "the CMH Defendants") [ECF No. 5] and *Plaintiffs' Motion to Remand And/Or, Alternatively, Motion to Amend And/Or Substitute John Doe Defendant Pursuant to 28 U.S.C. 1447(e)* [ECF No. 9]. For the reasons discussed herein, the Motion to Remand is **DENIED**, the Motion to Compel Arbitration is **GRANTED**, and the action is **STAYED** pending arbitration.

                                **I.**      <u>**BACKGROUND**</u>

Plaintiffs Jack and Heather Lawhun, residents of Morgantown, West Virginia, bought a manufactured home from Defendants on

**MEMORANDUM OPINION AND ORDER DENYING REMAND,
COMPELLING ARBITRATION, AND STAYING PROCEEDINGS**

January 22, 2020. ECF No. 1-1, Compl. ¶ 8. Defendant CMH Homes, Inc., or Clayton Homes Morgantown, WV, is registered to do business in the state of West Virginia and has its principal place of business in the state of Tennessee. Id. ¶ 2. CMH of KY, Inc., also does business in the state of West Virginia and has its principal place of business in the state of Tennessee. Id. ¶ 3. CMH Manufacturing, Inc., or Clayton Homes, is registered with the state of West Virginia but its principal office is in the state of Tennessee. Id. ¶ 4. Finally, John Doe defendants are "unknown to the plaintiffs" but "may be liable to them . . . [as] principals of the defendants." Id. ¶ 5.

On September 19, 2022, Plaintiffs filed a complaint against CMH Defendants, CHM of KY, Inc.,[1] and John Doe Persons and/or Entities in the Circuit Court of Monongalia County. ECF No. 1-1, Compl. CMH Defendants filed a notice of removal on November 7, 2022. ECF No. 1. Plaintiffs sued the defendants to recover damages for their alleged injuries due to Defendants' failures in manufacturing and constructing Plaintiffs' home. Id. Plaintiffs bring five (5) causes of action: (1) Negligence/Gross Negligence/Recklessness, (2) Fraud/Constructive Fraud/Material Misrepresentation and/or Omission, (3) Breach of Contract/Breach

---

[1] This defendant is referred to as both "CHM of KY, Inc." and "CMH of KY, Inc." However, on the style of the Complaint, Defendant's title is "CHM of KY, Inc."

of Covenant of Good Faith and Fair Dealing, (4) Tort of Outrage, and (5) Declaratory Action.

CMH Defendants filed a motion to compel arbitration and stay proceedings [ECF No. 5] ("motion to compel"). Attached to the motion to compel are copies of affidavits and documents, including the Sales Agreement which incorporates the "Binding Dispute Resolution Agreement" at issue here. The motion to compel is briefed and ripe for review.

Plaintiff thereafter filed a motion to remand, or, in the alternative, amend the complaint to add parties or conduct jurisdictional discovery. [ECF No. 9]. It is also fully briefed and ripe for review. Also pending are Defendants' motion to strike response in opposition to motion to compel [ECF No. 12], Plaintiffs' motion for leave to amend [ECF No. 25], and Defendants' motion to stay and request for status conference [ECF No. 28].

## II. APPLICABLE LAW

### A. Remand

When an action is removed from state court, a federal district court must determine whether it has original jurisdiction over the plaintiff's claims. Kokkonen v. Guardian Life Ins. Co. of Am., 511 U.S. 375, 377 (4th Cir. 1994). A party may remove to federal court any state "civil action where the matter in controversy exceeds the sum or value of $75,000 . . . and is between citizens

of different States." 28 U.S.C. §§ 1332(a), 1441(a). An action must be fit for federal adjudication at the time the removal petition is filed. See 28 U.S.C. § 1441(a); Moffitt v. Residential Funding Co., LLC, 604 F.3d 156, 159 (4th Cir. 2010).

When a party removes an action based upon diversity of citizenship, the removing party bears the burden of establishing "the amount in controversy exceeds the sum or value of $75,000, exclusive of interests and costs, and is between citizens of different states." 28 U.S.C. § 1332. "If after removal the plaintiff seeks to join additional defendants whose joinder would destroy subject matter jurisdiction, the court may deny joinder, or permit joinder and remand the action to the State court." 28 U.S.C. § 1447(e). In determining post-removal joinder of a nondiverse defendant, the Court should consider "the extent to which the purpose of the amendment is to defeat federal jurisdiction, whether the plaintiff has been dilatory in asking for amendment, whether the plaintiff will be significantly injured if amendment is not allowed, and any other factors bearing on the equities." Gum v. General Electric Co., 5 F. Supp.2d 412, 414 (S.D.W. Va. 1998) (citing Hensgens v. Deere & Co., 833 F.2d 1179 (5th Cir. 1987)).

**B. Compel Arbitration**

The Federal Arbitration Act ("FAA") governs written

agreements to arbitrate a controversy arising out of a contract. An arbitration agreement "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2.  The Court must stay any suit or proceeding pending arbitration. 9 U.S.C. § 3. Of course, "a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit." Am. Recovery Corp. v. Computerized Thermal Imaging, Inc., 96 F.3d 88, 92 (4th Cir. 1996) (internal citation omitted). Federal law requires a "strong federal policy in favor of enforcing arbitration agreements." Hayes v. Delbert Servs. Corp., 811 F.3d 666, 671 (4th Cir. 2016) (citing Dean Witter Reynolds, Inc. v. Byrd, 470 U.S. 213, 218 (1985)).

   In the Fourth Circuit,

>   a litigant can compel arbitration under the [Federal Arbitration Act] if he can demonstrate "(1) the existence of a dispute between the parties, (2) a written agreement that includes an arbitration provision which purports to cover the dispute, (3) the relationship of the transaction, which is evidenced by the agreement, to interstate or foreign commerce, and (4) the failure, neglect or refusal of the defendant to arbitrate the dispute."  Whiteside v. Teltech Corp., 940 F.2d 99, 102 (4th Cir. 1991).

Adkins v. Lab. Ready, Inc., 303 F.3d 496, 500-01 (4th Cir. 2002). "Although federal law governs the arbitrability of disputes,

ordinary state-law principles resolve issues regarding the formation of contracts." May v. Nationstar Mortg., LLC, No. 3:12-CV-43, 2012 WL 3028467, at *4 (N.D.W. Va. July 25, 2012) (internal citation omitted).

### III. DISCUSSION

**A. The Motion to Remand is Denied.**

Plaintiffs move to remand the action to the Circuit Court of Monongalia County, West Virginia, under 28 U.S.C. § 1447(e). ECF No. 9. Plaintiffs request permission to conduct jurisdictional discovery, and if appropriate, leave for joinder, amendment, and remand because "the Court may be without subject matter jurisdiction over the instant civil action to the extent that the identities of the John Doe defendants" are unknown. Id. at 8.

CMH Defendants respond in opposition to the motion to remand, arguing first the Court should decide the motion to compel arbitration, and second, should the Court entertain the motion to remand, it should deny it because the plaintiffs failed to exercise their due diligence to ascertain the identities of the John Doe Defendants. ECF No. 14.

Initially, jurisdiction existed at the time of removal. The parties submit no argument that the named parties in this action are not completely diverse. See ECF No. 1-1, Compl. ¶¶ 2-5, 8.

Moreover, there is no suggestion the amount in controversy threshold is not satisfied. Plaintiffs' remand motion instead focuses on whether they should be afforded time to identify and join diversity-destroying defendants before this Court considers any substantive issues.[2] Therefore, the Court turns to the question of joinder of nondiverse defendants.

The Court must first consider "the extent to which the purpose of the amendment is to defeat federal jurisdiction," and second, "whether the plaintiff has been dilatory in asking for amendment." Gum, 5 F. Supp.2d at 414. Plaintiffs offer nothing meaningful in support of these factors. Essentially, Plaintiffs request remand in hopes their joinder of the individual, but still unnamed, John Doe Defendants defeat jurisdiction. The Court is without a proper motion to amend to consider. While there is a *Motion to Amend And/Or Substitute John Doe Defendant and Incorporated Memorandum* pending before the Court, [ECF No. 25], Plaintiffs failed to identify the parties they seek to join - other than a reference to CMH Defendants' Affidavit identifying certain contractors involved in Plaintiffs' manufactured home - and failed to attach a signed

---

[2] Defendants accurately point out such a request is borderline chicanery. Plaintiffs themselves were well aware of the identity of the contractors made subject of this procedural dispute before their counsel were in place. The same contractors were identified by name and business address in administrative complaints echoing Plaintiffs' claims here.

Amended Complaint naming the parties and stating a claim showing they are entitled to relief. "Considerable likelihood" that the John Doe defendants are West Virginia residents is insufficient to destroy the complete diversity amongst the parties that exists now and did at the time of removal. ECF No. 10 at 8. It is likewise clear the identities of the John Doe Defendants were reasonably identifiable prior to removal. CMH Defendants submitted an Affidavit identifying contractors who built the basement foundation, delivered, and installed the home at the Lawhun's real property. ECF No. 14-1, Cameon Aff., ¶¶ 5-6. The contractors began their work in June 2022, and Plaintiffs received contact information for the contractors and communicated with them regularly. Id. ¶¶ 6-10. Plaintiffs named the contractors in a consumer complaint they filed with the West Virginia Department of Labor. Id. ¶ 11. The Court weighs both factors – the extent to which joinder is an attempt to defeat federal jurisdiction and whether plaintiff has been dilatory in seeking amendment – strongly against joinder and amendment.

Third, the Court finds the plaintiffs will not be "significantly injured if amendment is not allowed." Gum, 5 F. Supp.2d at 414. There will be no injury to Plaintiffs in denying joinder because the parties will be compelled to arbitrate. As CMH Defendants point out, the plaintiffs are entitled to seek joinder

of the individual defendants in arbitration. Plaintiffs' stated injury, that they would be deprived an opportunity to seek complete relief against all liable parties, is unconvincing.

Finally, the Court considers "any other factors bearing on the equities" and finds none that favor granting joinder. Gum, 5 F. Supp.2d at 414. Considering the arguments of counsel and the record before it, the Court in its discretion **DENIES** joinder and the motion to amend [ECF No. 25]. For these reasons, the motion to remand is **DENIED** [ECF No. 9].

> **B. The Motion to Compel Arbitration and Stay Proceedings is Granted.**

CMH Defendants move the Court to stay these proceedings and require Plaintiffs' claims be submitted to arbitration pursuant to the Federal Arbitration Act ("FAA"), 9 U.S.C. § 3. Defendants argue this matter is fit for arbitration because the arbitration agreement is valid and enforceable, and covers the claims alleged in Plaintiffs' suit. In response, Plaintiffs argue the Court should deny the motion because the Court is without proper jurisdiction to issue a decision, and Plaintiffs are not in breach of the Binding Dispute Resolution Agreement.

The first Adkins factor is satisfied because there is a dispute between the parties, as evidenced by Plaintiffs' Complaint. See May v. Nationstar Mortg., LLC, No. 3:12-CV-43,

2012 WL 3028467, at *8 (N.D.W. Va. July 25, 2012). Likewise, the fourth factor is satisfied because Plaintiffs failed, neglected, or refused to arbitrate, which, again, is evidenced by the filing of this lawsuit. Id. At issue are the second and third factors: the validity of the written agreement that includes an arbitration provision which purports to cover the dispute; and the relationship of the transaction, evidenced by the agreement, to interstate or foreign commerce.

> **A. Written Agreement that Includes Arbitration Provision Which Covers the Dispute**

First, there is a written agreement between the parties. The Sales Agreement includes a Binding Dispute Resolution Agreement ("BDRA") that purports to cover any claims "arising out of or related to" the Home, its design and construction. ECF No. 5-1, Sales Agreement, BDRA. On or about January 22, 2022, Jack Lawhun, Plaintiff in this action, signed the Sales Agreement and BDRA. ECF No. 5-1, BDRA. The same date, a representative of CMH Defendants signed both the Sales Agreement and BDRA as Seller. Id.

As a person "claiming an interest in the Home," and "an occupant[] of the Home," Heather Lawhun, co-plaintiff, is bound as an intended beneficiary:

> Buyer and Seller agree that this Agreement also applies to and governs the rights of intended beneficiaries of this Agreement, who include the following additional Parties: (i)

> manufacturers of the Home[,] . . . (iv) all who sign or benefit from the Contract[,] . . . (v) anyone claiming an interest in the Home, . . . and (vii) any occupants of the Home (referred to hereafter collectively as "Beneficiaries") (Buyer, Seller and Beneficiaries may be referred to herein as "Party" or "Parties").

ECF No. 5-1, BDRA. In Plaintiffs' complaint, both Plaintiffs assert an interest in the home and allege to be residents of the address in which the property is situate. Compl. ¶ 2. A party is an intended beneficiary of a contract when the two parties who entered into a valid contract had the intention, either express or implied, to benefit a third party. Forrester v. Penn Lyon Homes, Inc, 2006 WL 8438139, *3 (N.D.W. Va. Nov. 30, 2006). "[I]ncidental benefit alone is insufficient." Id. (internal citation omitted). Because the first paragraph of the BDRA makes a person who claims interest in the home and occupants of the home an intended beneficiary, like Jack Lawhun, Heather Lawhun is an intended beneficiary to whom the BDRA applies.

    The elements of a contract under West Virginia law are likewise satisfied with respect to the BDRA. Offer, acceptance, and consideration is required in every contract. Cook v. Heck's, Inc., 342 S.E.2d 453, 458 (W. Va. 1986). "[A] valid written instrument which expresses the intent of the parties in plain and unambiguous language is not subject to judicial construction or

interpretation but will be applied and enforced according to such intent." Syl. Pt. 1, Cotiga Dev. Co. v. United Fuel Gas Co., 128 S.E.2d 626 (W. Va. 1962).

Plaintiffs argue the BDRA is a contract of adhesion which is substantively unconscionable and should not be enforced. ECF No. 11 at 8-14.

> The doctrine of unconscionability means that, because of an overall and gross imbalance, one-sidedness or lop-sidedness in a contract, a court may be justified in refusing to enforce the contract as written. . . A determination of unconscionability must focus on the relative positions of the parties, the adequacy of the bargaining position, the meaningful alternatives available to the plaintiff, and the existence of unfair terms in the contract.

Brown v. Genesis Healthcare Corp., 729 S.E.2d 217, 226-27 (W. Va. 2012) (cleaned up).

> A contract of adhesion is one drafted and imposed by a party of superior strength that leaves the subscribing party little or no opportunity to alter the substantive terms, and only the opportunity to adhere to the contract or reject it. A contract of adhesion should receive greater scrutiny than a contract with bargained-for terms to determine if it imposes terms that are oppressive, unconscionable or beyond the reasonable expectations of an ordinary person.

Id. at 228 (internal citation and quotation omitted). "Agreements to arbitrate must contain at least 'a modicum of bilaterality' to avoid unconscionability." Id. at 228. A modicum of bilaterality is

lacking when the agreement "limit[s] the plaintiff's rights [to seek damages] and not [the defendant's]." <u>Gooch v. Cebridge Acquisition, LLC</u>, No. 2:22-cv-00184, 2023 WL 415984, *17 (S.D.W. Va. Jan. 25, 2023).

The BDRA includes the following:

> K. <u>Exceptions</u>: Notwithstanding any other provision of this Agreement, the Parties agrees that Seller may use judicial process (filing a lawsuit): (a) to obtain possession of the Home where Seller has not been paid In full as agreed under the Contract or to otherwise enforce Seller's ownership interest in the Home, or enforce any related mortgage or deed of trust in Seller's name, and (b) to seek preliminary relief, such as a restraining order or injunctive relief, in order to preserve the existence, location, condition, or productive use of the Home or other property. Notwithstanding the Rules, the Parties also expressly agree that this Arbitration Agreement does not apply to any Claims where the amount in controversy is less than the jurisdictional limit of the small claims court in the jurisdiction where Buyer resides. <u>*provided,*</u> <u>*however*</u>, that the Parties agree that any such small claims Claim may only be brought on an individual basis and not as a class action. Bringing a court proceeding described in this section "K.", however, shall not be a waiver of any Party's right to compel Arbitration of any other Claims, including Buyer's counterclaim(s) in a suit brought by Seller.

ECF No. 5-1, BDRA, ¶ K. And on the fourth page, in bold:

> **R. <u>NOTICE</u>: BUYER UNDERSTANDS THAT THIS DISPUTE RESOLUTION AGREEMENT IS AN IMPORTANT AGREEMENT AND THAT THE TERMS OF THIS AGREEMENT AFFECT BUYER'S LEGAL RIGHTS. BY**

> **SIGNING THIS DISPUTE RESOLUTION AGREEMENT, BUYER ACKNOWLEDGES THAT BUYER HAS READ, UNDERSTANDS AND AGREES TO BE BOUND BY THIS AGREEMENT. BUYER AND SELLER FURTHER INTEND TO DIRECTLY BENEFIT AND BIND ALL BENEFICIARIES TO THIS AGREEMENT. IF BUYER DOES NOT UNDERSTAND ANY OF THE TERMS OR PROVISIONS OF THIS AGREEMENT, INCLUDING ADVANTAGES OR DISADVANTAGES OF ARBITRATION, THEN BUYER SHOULD SEEK INDEPENDENT LEGAL ADVICE BEFORE SIGNING THIS AGREEMENT. THE PARTIES HEREBY WAIVE THEIR RIGHTS, IF ANY, TO TRIAL BY JUDGE OR JURY, WHERE APPLICABLE. THE PARTIES HAVE ENTERED INTO THIS AGREEMENT KNOWINGLY, WILLINGLY AND VOLUNTARILY.**

Id. ¶ R.

The BDRA does not lack mutuality nor do Plaintiffs explain how it "is one-sided, unreasonable and unconscionable, and provides the sophisticated drafters of a contract of adhesion with greater rights to seek legal redress than the plaintiffs." ECF No. 11 at 14. Nor have Plaintiffs pointed the Court to the BDRA's "terms that are oppressive, unconscionable or beyond the reasonable expectations of an ordinary person." Brown v. Genesis Healthcare Corp., 729 S.E.2d 217, 228 (W. Va. 2012). Assertions in a brief, unsupported by the record, do not establish procedural unconscionability. State ex rel. Ocwen Loan Servs., LLC v. Webster, 752 S.E.2d 372, 389 (W. Va. 2013).

The BDRA makes clear its terms, and Plaintiffs agreed to be bound by them. As CMH Defendants point out, ¶ K ("the Carve Out") "permits CMH Homes to retake the Home if the Lawhuns failed to pay

for it." ECF No. 13 at 10. Indeed, carve out clauses do not render a contract unconscionable. Webster, 752 S.E.2d at 396; see also Baker v. Green Tree Serv. LLC, No. 5:09-cv-00332, 2010 WL 1404088, *4 (S.D.W. Va. Mar. 31, 2010) ("[A] lender's ability to foreclose or repossess a home when the buyer defaults is not a new or additional remedy given to the lender by the contract. Instead, it is a remedy independently available to the lender by virtue of law, and the contract does no more than preserve that right . . . .").

The BDRA unequivocally covers the instant lawsuit, as it applies to

> all pre-existing, present, or future disputes, claims, controversies, grievances, and causes of action against Seller, including, but not limited to, common law claims, contract and warranty claims, tort claims, statutory claims, administrative law claims, and any other matter in question, . . . arising out of or relating to (i) the modular or manufactured home(s) purchased, sold, owned, occupied and/or delivered in any transaction with Buyer or Beneficiaries (the "Home"), . . . (iii) any products, goods, services, insurance, supplemental warranty, service contract, and real property (including improvements to the real property) sold under or referred to in the Contract, . . . [and] (vi) the design and construction of the Home.

ECF No. 5-1, BDRA ¶ A.

Plaintiffs and CMH Defendants agreed to be subject to the BDRA, as part of the Sales Agreement, for any claims "arising out

of or related to" the Home, its design and construction. Plaintiffs allege, in part, negligence and breach of contract against Defendants for their failures in manufacturing and constructing the Home. Plaintiffs and CMH Defendants did not enter into a consumer credit transaction secured by a dwelling, and therefore ¶ B does not apply to this dispute. For these reasons, the BDRA is a valid, enforceable contract which covers the dispute. CMH Defendants have satisfied the second factor under Adkins.

### B. Relationship of the Transaction to Interstate Commerce

The third factor is also satisfied because the BDRA is a contract evidencing a transaction involving interstate commerce. Adkins v. Lab. Ready, Inc., 303 F.3d 496, 500-01 (4th Cir. 2002). "Involving interstate commerce" and "affecting interstate commerce" both "signal[] an intent to exercise Congress' commerce power to the full." Allied-Bruce Terminix Companies, Inc. v. Dobson, 513 U.S. 265, 277-78 (1995). "[9 U.S.C. § 2] applies where there is 'a contract evidencing a transaction involving commerce,'" or "commerce in fact." Id. (emphasis added) (quoting 9 U.S.C. § 2).

The BDRA involved interstate commerce. The Home was manufactured by CMH Manufacturing in Maryville, Tennessee. ECF No. 5-1, Holland Aff. ¶ 7. Parts of the Home were supplied by vendors

throughout the United States. Id. "The Home was shipped in interstate commerce from CMH Manufacturing's factory in Tennessee to CMH Homes in West Virginia." Id. The BDRA must be enforced under the FAA.

## IV.   CONCLUSION

For the reasons discussed above, the Motion to Remand is **DENIED** [ECF No. 9], the Motion to Compel Arbitration is **GRANTED**, and the action is **STAYED** pending arbitration [ECF No. 5]. Pursuant to their agreement, the parties shall participate in arbitration. This action is **STAYED** pending arbitration of this matter and the parties are **DIRECTED** to submit a filing with the Court when arbitration is complete. The remaining pending motions are **DENIED AS MOOT**. ECF Nos. 12, 28, 29.

It is so **ORDERED.**

The Clerk is **DIRECTED** to transmit copies of this Memorandum Opinion and Order to counsel of record.

**DATED**: August 16, 2023

_Tom S Kleeh_
THOMAS S. KLEEH, CHIEF JUDGE
NORTHERN DISTRICT OF WEST VIRGINIA